Clyde C. **FREEMAN**, et al., Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE COR-PORATION, as receiver for Madison National Bank, Defendant.**

**Civ. A. No. 93–2142.**

United States District Court, District of Columbia.

Dec. 1, 1993.

Harvey A. Levin, Winkelman & Mann, Washington, DC, for plaintiffs.

Charles T. Duncan and Michelle Henderson Phillips, Reid & Priest, Washington, DC, for defendant.

## MEMORANDUM OPINION
## AND ORDER

SPORKIN, District Judge.

This case involves failed loans made by a failed bank to a failed radio station. Plaintiffs Clyde C. Freeman and Nancy F. Freeman, residents of the District of Columbia, sued the Federal Deposit Insurance Corporation ("FDIC") in the Superior Court of the District of Columbia to prevent the FDIC from foreclosing on their home and other properties. The FDIC properly removed the

case to this Court. Before the Court are Plaintiffs' motion for partial summary judgment, Defendant's Cross Motion for Partial Summary Judgment, and Defendant's Motion to Dismiss.

Plaintiffs had previously filed an application for a Temporary Restraining Order and a Preliminary Injunction. On November 4, 1993, the Court heard oral argument on the application for the TRO and the preliminary injunction. It was agreed by the parties at the November 4, 1993 hearing that this matter could be resolved on summary judgment. The Court held a summary judgment hearing on November 17, 1993. Because of the complexity of the facts and law surrounding this issue, the Court found it necessary to issue a Temporary Restraining Order on November 22, 1993, preventing any action by the FDIC to foreclose on Plaintiffs' residence until the Court could address the various issues presented by the case. Since the issuance of the TRO, the Court has had an opportunity to review the issues presented and as a result the Temporary Restraining Order will be dissolved and Summary Judgment will be granted in favor of the Defendant, FDIC.

*Facts*

In October 1984, Mr. Howard Saunders obtained a loan from Madison National Bank ("Madison National") in the amount of $600,000 for his company, Howard Saunders Communications to purchase Radio Station WANT–AM in Richmond, Virginia. The loan was secured by a deed of trust on the radio station and all related real and personal property, and personal guarantees from the principal owners of Saunders Communications in the amount of $200,000 each. Clyde and Nancy Freeman were principal owners of Saunders and executed a loan guarantee in the amount of $200,000 to Madison National.

In January, 1985, WANT–AM was sold to Robinson Broadcasting Corporation ("Robinson") for $600,000. Madison National financed the sale of WANT to Robinson by making a $600,000 loan to Robinson. Robinson executed a Deed of Trust Note for the $600,000 (the "$600,000 Note"). As security for repayment of the $600,000 Note Madison was given a Deed of Trust on the 6.2 acre tract of property on which the Robinson radio tower was located in Henrico County, Virginia ("the "Henrico Property"). As additional security for repayment of the $600,000 Note, the guarantors on the Saunders Communications loan from Madison National, including the Freemans, remained as guarantors on the new Robinson Broadcasting loan.

Almost immediately after the $600,000 loan was made, Robinson broadcasting began to experience financial problems because the cash flow generated by WANT was insufficient to service the $13,000 per month loan payment. In 1986, Plaintiffs were contacted by Howard Saunders, a principal officer and stockholder of Robinson to determine if Plaintiffs were interested in taking over WANT–AM. Madison was aware of the radio station's financial problems and was contemplating foreclosing on the loan.

In early 1987, Madison consented to Plaintiffs taking over WANT–AM. Madison required that the $600,000 Note, the Deed of Trust on the Henrico Property and the Stockholders' Guarantees remain in place.

In June 1987, Plaintiffs became the sole stockholders of Robinson. At that time, Madison required, and Plaintiffs granted, the pledge of Plaintiffs' Robinson stock to Madison as additional security for repayment of the $600,000 Note.

The Freemans encountered serious difficulties servicing the loan from the start because WANT–AM did not generate enough income to service the debt. Through June 1987 to January 1989, WANT–AM continued to have financial difficulties. In January 1989, in order to consolidate various loans that the Plaintiffs had at Madison, a restructuring of the debt was arranged. Plaintiffs satisfied the $600,000 Note by giving Madison a new note in the amount of $740,000, secured by a first Deed of Trust on Plaintiffs' Residence. The $740,000 figure took in account the approximately $559,000 balance outstanding on the $600,000 Note, $75,000 to retire the existing indebtedness on the Residence and approximately $106,000, for an interest reserve on the $740,000 loan. Plaintiffs also borrowed an additional $150,000, secured by a first Deed of Trust on Plaintiffs' office building. The proceeds of this loan

were to pay off an existing first deed of trust loan on the office building property, and to pay costs and accrued interest on their existing debt to Madison. Madison incorporated the terms of this transaction in two Letters of Commitment, dated January 18, 1989.

Plaintiffs allege that as part of this transaction, they were to receive the $600,000 Note and attendant rights and benefits under the Deed of Trust on the Henrico Property and the Stockholders' Guarantees.

Because the Bank required additional collateral for the $740,000 Note, the record shows the Plaintiffs re-endorsed the $600,000 Note back to Madison, and Madison retained possession of the $600,000 Note, the Stockholders' Guarantees and the Henrico Property Deed of Trust.[1]

The Freemans defaulted on both the $740,-000 loan and the $150,000 loan and formal default was declared by Madison in November, 1990. Plaintiffs attribute their default on the $740,000 Note to their inability to collect on the Guarantees on the $600,000 Note.

Beginning in 1989, Plaintiffs undertook to sell WANT-AM. By early 1990, they had found a purchaser, Opticom, Inc., and had reached a tentative agreement with Opticom for purchase. Pursuant to Plaintiffs' arrangements with Opticom, the Federal Communications Commission formally transferred the license to operate WANT-AM from Plaintiffs to Opticom. Plaintiffs allege that this entire transaction failed to close, however, because Madison had retained the $600,000 Note and the first lien on the Henrico Property, as a consequence of which Opticom could not get good title to the Henrico Property and could not obtain financing. Opticom currently owns the WANT-FM broadcasting license but does not broadcast.

Madison was closed by the FDIC on May 10, 1991. FDIC made demand upon the Freemans for payment of the $740,000 and the $150,000 notes on April 8, 1992. The Freemans were unable to pay the amount due on the notes. The FDIC formally initiated foreclosure proceedings against the Henrico Property, Plaintiffs' Residence and Plaintiffs' Office Building pursuant to the Deeds of Trust securing repayment of the notes.

The $600,000 Note, made on January 23, 1985 for a five year term, matured on January 23, 1990. The statute of limitations on collection began to run on that date. Plaintiffs allege that the limitations period of three years expired on January 23, 1993 without Madison or the FDIC taking any action to enforce or otherwise protect the $600,000 Note or the Stockholders' Guarantees.

Plaintiffs brought this action to declare the rights of the parties with respect to the $600,000 Note, the $740,000 Note and the $150,000 Note, and to rescind the February 10, 1989 Transaction.

*Arguments of the Parties*

The Freemans make three arguments. First, they assert that the February 10, 1989 transaction was invalid because of fraud. Second, the Freemans claim that enforcement of the lien on their home is in violation of the FDIC's obligations arising out of the February 10, 1989 transaction which involved a "bilateral purchase-and-sale". And finally, Plaintiffs argue that under the Uniform Commercial Code, the Freemans' $740,000 obligation—secured by the $600,000 Note and the Freemans' residence—was satisfied by the FDIC election to take the $600,000 Note.

The FDIC responds that this Court does not have jurisdiction to address Plaintiffs' claims because they did not exhaust the appropriate administrative procedures. Second, the FDIC argues that there was no fraud tainting the February 10 transaction. It claims the terms of the agreement were clear on the face of the Commitment Letters and if there were other, unwritten representations made to the Freemans, the FDIC

---

1. This arrangement was foreseen in the Letter of Commitment:
   Endorsement by Robinson Broadcasting, Corp. of the above-described loan held by Madison National Bank, Loan # 144427, to Dr. and Mrs. Freeman. Re-endorsement of said note by Dr. and Mrs. Freeman to Madison National Bank.
   *Commitment Letter of Madison National Bank,* January 18, 1989 at 1–2.

cannot be bound by those unwritten representations under the *D'Oench Duhme* doctrine. And finally, the FDIC argues that the U.C.C. provisions referred to by plaintiffs are inapplicable.

*Analysis and Decision*

■ Because this Court finds no merit to Plaintiffs' substantive claims, it need not address defendant's exhaustion of remedies and procedural arguments.

The Court finds no evidence of fraud in the record. While the transactions were complex, this much is clear: the Freemans put up their home and other property as security for a bank loan. The Freemans then defaulted on the bank loan. The FDIC, as successor in interest to Madison National, has the right to proceed against the collateral the Freemans' put up against the loan.

■ The Freemans insist that as a result of the February 10, 1989 transaction they were entitled to the $600,000 Note and should have received the right to proceed against the Guarantors on the Note. But the facts are to the contrary. The Commitment Letter of January 18, 1989 makes it clear on its face that the $600,000 Note was to be immediately re-endorsed to Madison as additional collateral for the $740,000 loan. If there were some unwritten agreement that the Freemans were to become the owners of the $600,000 Note in order to proceed against the guarantors, then the FDIC would not be bound by such an unwritten agreement under the *D'Oench Duhme* doctrine. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (FDIC not bound by secret agreements not reflected in the banks' records); *Langley v. FDIC*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987) (*D'Oench Duhme* doctrine and subsequent statute assure that FDIC will be able to quickly and accurately evaluate an insolvent institutions assets); *see also* 12 U.S.C. § 1823(e) (no agreement which tends to diminish interest of FDIC in an asset is valid unless, *inter alia*, it is in writing).

The Freemans were themselves guarantors on the $600,000 Note in the amount of $200,000. It is somewhat disingenuous for the Freemans to claim that they defaulted on the $740,000 loan due to an inability on their part to move against the guarantors on the $600,000 Note when they themselves were guarantors on the $600,000 Note.

■ Neither does the Court find Plaintiffs' arguments with respect the Uniform Commercial Code persuasive. Essentially, Plaintiffs argue that FDIC's failure to act on the $600,000 Note, following the Freemans' default on the $740,000 Note in November 1990 and the maturity of the $740,000 Note in February, 1992, meant that the FDIC elected to take the $600,000 Note in full satisfaction of the Freeman's debt. By such action, the Freemans argue the FDIC relieved the Freemans of any further liability under the $740,000 Note. *See* D.C.Code § 28:9–505(2). Such a reading of the relevant provisions of the D.C.Code would grant the Plaintiffs a windfall. The Freemans cannot be absolved of a $740,000 liability because the FDIC chose for one course of action rather than another.

■ Plaintiffs also argue that the FDIC, by failing to move against the guarantors of the $600,000 Note before the expiration of the statute of limitations, unjustifiably impaired the collateral and thereby discharged the Freemans from their repayment obligation. *See* D.C.Code § 28:3–606(1). This argument runs counter to the fact that when Madison failed and the FDIC became receiver for the bank, the federal statute of limitations applicable to the FDIC became effective. Federal law extends the time for any right of action by the FDIC as receiver to six years from the date of the claim accrual. *See* 12 U.S.C. § 1821(d)(14)(A).

At oral argument, the FDIC assured the Court that it would pursue its rights against the guarantors. If the FDIC is successful in its efforts, then of course, the Plaintiffs would be credited with any amounts recovered that exceed their obligation to the bank.

When cut from all its complexity, this case is quite simple. The Freemans borrowed a large sum of money, securing the debt with the deed of trust on their home. Having defaulted on the debt, the defendant is entitled to proceed against the pledged collateral.

An appropriate order accompanies this opinion.

## ORDER

Based on the Plaintiffs' Motion for Partial Summary Judgment, Defendant's Motion to Dismiss, Defendant's Cross–Motion for Partial Summary Judgment, all opposition thereto, extensive oral argument, and for the reasons stated in the foregoing memorandum opinion, it is hereby

**ORDERED** that the Temporary Restraining Order issued on November 22, 1993 be dissolved, and it is

**FURTHER ORDERED** that summary judgment be granted in favor of the Defendant.