USA v. Burke, et al.                    CR-96-050-M   12/09/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                                    Criminal No. 96-50-1-6-M

Stephen Burke, Patrick McGonagle,
Matthew McDonald, Michael O'Halloran,
and Anthony Shea


**O R D E R**


Defendants move for a mistrial on grounds that the government's opening statement impermissibly included prejudicial comments that had the effect of denying them a fair trial. The government responds by asserting that its opening (which it describes as "a vivid and rhetorical account" delivered in a "colorful" narrative form) properly presented the government's case and avoided boring the jury with a "turgid," "indolent," or "vapid" presentation.  The government only grudgingly acknowledges that some improper comments might have been made. During the course of the opening the court found it necessary to interrupt several times, both in response to defense objections and on its own initiative, in order to correct what it perceived to be an inordinate risk that the prosecutor's comments might be misconstrued by the jurors.  Given the government's firm position — that the opening was perfectly appropriate — the ruling on defendant's motion for mistrial based on that opening ought to be discussed in greater detail than might ordinarily be the case, not to make more of the flaws the court perceives than is there,

but to discourage repetition of that style of opening in the future.

The point of departure is not arguable. A prosecutor carries a heavy burden to see that justice is done despite the burdensome personal demands associated with investigating and prosecuting a criminal case. See Brady v. Maryland, 373 U.S. 83, 87 n.2 (1963). The government's oft-cited special responsibility to serve justice arises from the unique role of the United States Attorney in our legal system:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor--indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935); see also United States v. Moreno, 991 F.2d 943, 949 (1st Cir. 1993) ("[F]or the government in a criminal case, fairness is more important than victory.").

The United States Attorney and his assistants serve justice best when they advocate both fairly and effectively. The prosecutor's obligation when giving an opening statement is to prepare and deliver a fair and useful preview of the evidence he or she in good faith expects to present to the jury during the

2

course of the trial.  Appeals to passion or prejudice, or attempts to poison the minds of jurors against people on trial, or expressions of personal opinion, or efforts to persuade a jury of a defendant's guilt before any evidence is presented, are all improper.  "An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument."  United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring).

The scope and extent of an opening statement is within the control of the trial judge, who has an independent obligation to protect the integrity and fairness of a criminal trial.  See Dinitz, 424 U.S. at 612; United States v. Hershenow, 680 F.2d 847, 858 (1st Cir. 1982).  When necessary, judges have exercised their discretion to control openings by limiting their length or subject matter and by interrupting to stop what is transparently argument or improper comment.  See, e.g., United States v. Doyle, 121 F.3d 1078, 1094 (7th Cir. 1997); United States v. Gray, 105 F.3d 956, 963 (5th Cir.), cert. denied, 117 S. Ct. 1326, 117 S. Ct. 1856, 117 S. Ct. 2530 (1997); Cox v. Treadway, 75 F.3d 230, 237 (6th Cir.), cert. denied, 117 S. Ct. 78 (1996); United States v. Goode, 814 F.2d 1353, 1355 (9th Cir. 1987).  In some jurisdictions, far more confining measures have been deemed necessary to curb overly enthusiastic opening statements; other judges have found it necessary to prohibit opening statements by

3

counsel altogether, and instead require counsel to submit written drafts that are edited and then delivered by the presiding judge. See, e.g. United States v. Smyth, 842 F. Supp. 20, 21 n.3 (D.D.C. 1994); United States v. Young and Rubicam, 741 F. Supp. 334, 352-53 (D. Conn. 1990).

A prosecutor's opening statement should be, and is, "limited to a discussion of the evidence which he intends to introduce and believes in good faith is admissible and available," and any means of diverting the jury's attention from such evidence or otherwise "poison[ing] the jury's mind against the defendant" is improper. United States v. DeVincent, 632 F.2d 147, 153 (1st Cir. 1980). Thus, a prosecutor's opening should not include "overdramatic, unsavory characterizations" or the prosecutor's "own personal evaluation of the case." Hon. Donald S. Vorhees, Manual on Recurring Problems in Criminal Trials, Part IV, A, 1, at 139 (Federal Judicial Center, 4th ed. 1997). Due to the unique position of the prosecutor, as representative and advocate for the United States, "improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Berger, 295 U.S. at 88; see also United States v. Rosales, 19 F.3d 763, 767 (1st Cir. 1994) ("When a prosecutor places the credibility of counsel at issue, the advantage lies solidly with the government, and thus, prosecutors are prohibited from doing so.").

4

It is simply inappropriate for a prosecutor to appeal to a jury's passions with inflammatory language or references to illicit associations. <u>See, e.g.</u>, <u>Arrieta-Agressot v. United States</u>, 3 F.3d 525, 527 (1st Cir. 1993); <u>Moreno</u>, 991 F.2d at 947; <u>United States v. Johnson</u>, 952 F.2d 565, 574 (1st Cir. 1991); <u>United States v. Machor</u>, 879 F.2d 945, 956 (1st Cir. 1989); <u>United States v. Gallagher</u>, 735 F.2d 641, 643-44 (1st Cir. 1984). Suggestions in an opening, or closing, of a "guilt by association" theory are also improper, <u>Johnson</u>, 952 F.2d at 574, as are remarks that seem to rely on personal knowledge or on evidence that will not be available to the jury, <u>see</u> <u>United States v. Smith</u>, 982 F.2d 681, 683 (1st Cir. 1993). A prosecutor may not put his or her personal credibility at issue by in effect testifying about the case or by expressing his or her personal opinion of, or conclusions drawn from, the evidence. <u>See, e.g.</u>, <u>Rosales</u>, 19 F.3d at 767; <u>Smith</u>, 982 F.2d at 683.

## A. <u>The Opening Statement</u>

In this case, the prosecutor began his opening statement by explaining that the reason he had had little to say during the voir dire process was not because he was a "bump on a log," but because he took the jurors at their word when they said they would be fair and did not want to waste time. Defense counsel participated in extensive voir dire, and so at least a hint of negative implication introduced the presentation. <u>See</u> <u>United States v. Bennett</u>, 75 F.3d 40, 46 (1st Cir.)("The prosecutor is

expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel."), cert. denied, 117 S. Ct. 130 (1996).

The prosecutor then began to tell a dramatic story, the story of his case, from the viewpoint of an omniscient and omnipresent observer. He said the case was about "... the victims that these men [defendants] terrorized, and sometimes even murdered in the course of doing their thing." The narrative was not organized in chronological fashion; it did not describe first the pending charges, or dwell on what had to be proved, or reveal what evidence would show the development and operation of the alleged six year overarching conspiracy charged in the indictment, but immediately focused on the most emotionally charged and appalling crime alleged -- the armored car robbery in Hudson, New Hampshire, during which two guards were murdered. The prosecutor highlighted and emphasized the murder of the guards:

> Everybody said that Ron Normandeau and Larry Johnson were good guys. Were regular guys. Guys that went to work to support their family. And August 25th, 1994 began for them in the regular way, but the day ended early for both of them. For Larry Johnson, it ended in the back of an armored truck with a bunch of money bags shot dead by numerous bullets by five of these men. By the joint action of five of these men, who robbed almost half a million dollars from that armored truck.
> And for Ron Normandeau it also ended early. Shot and then dumped, still alive, in the back of a maroon stolen Lumina van which five of these men had stolen and used to rob that armored car. Executed. Executed. But not before Ron Normandeau begged for his life from that man, Michael O'Halloran.

6

Although the details about the charged crime, including references to expected evidence related to the murders, could have been presented in a way that posed less risk of inflaming passion, the prosecutor's tone and style posed a decided risk of that happening, and a risk that the jury would understand him to be suggesting that he had personal knowledge of the events, of what "everybody" said, of who shot the guards, and, that his interpretive gloss could be relied upon as accurately putting the events in the proper perspective. It appeared to the court that the style adopted might undermine the jury's ability to be fair and impartial in their consideration of the evidence, given what appeared to be a pattern of employing rather dramatic rhetorical devices. A story-telling style is not appropriate for an opening statement, and will not be permitted, if it poses a substantial risk that the jury may misunderstand the prosecutor's dramatic comments as conveying his or her personal opinions about or conclusions drawn from the evidence, or the guilt of the defendants.[1]

Here, the prosecutor's opening rarely identified witnesses who might be called, or described what those witnesses might say. It focused instead on invoking colorful imagery and describing frightening details of events no eye witness would likely describe, and which the jury could accept only if they put the

[1]For example, whether the guards were "executed" is a conclusion to be drawn from the evidence; the prosecutor's comment was argumentative at best and could be misinterpreted as a plain appeal to the jury's passions and sympathies, none of which belongs in an opening statement.

7

same cinematic interpretation on the expected indirect evidence as the prosecutor obviously had.

For example, when the prosecutor returned to the Hudson armored car robbery he related the events in a broadcaster's "on the scene" style:

> Almost immediately a shot rang out and Ron took one in the side and went down. Two of the robbers went off, picked Ron up and threw him in the side of the Lumina van, still alive. Other robbers stormed through the side door of that truck. Larry Johnson heard that shot and he knew he was in for the fight of his life.

> Well, within moments the armored truck and the Lumina are driving south out of the parking lot, driving south on Lowell Road, take a left on the getaway route. But a decision's been made. Things haven't gone as planned because of the shootings. In a little bit of a panic they decided to blow past the first switch, which is the Jimmy. It's parked behind a doughnut shop.

Of course, what the victims were thinking and what the robbers decided and whether they were in a "panic" and whether they "blew past the switch," are all conclusions to be drawn from evidence, by the jury — perhaps even suggested in closing argument, but not argued during opening. The descriptions, again, were at best argumentative, and were expressed in a manner that could have left the jury with the impression that the prosecutor knew what had happened and was personally verifying it. While it is not necessary to preface every sentence with the time-honored "the evidence will show," still, it _is_ necessary for a prosecutor to let the jury know that he or she is in fact telling them what the _evidence_ will be, rather than what he or she personally knows or believes or thinks to be the truth. What little effort was made in that regard was weak and unconvincing.

8

The government argues that at least the comment about the guard's state of mind was permissible based upon expected circumstantial evidence showing how the robbery was carried out, but that argument avoids an obvious point — the comment is conclusory (and argumentative). The government says, "Can any reasonable person seriously doubt that Larry Johnson--an armed guard who watches as his partner is gunned down by armed bandits who are storming the armored car in which he is sitting--'knew he was in for the fight of his life?'" Probably not. But, it has long been settled that a prosecutor <u>cannot</u> present his own conclusions drawn from the evidence to the jury, <u>United States v. Rosa</u>, 705 F.2d 1375, 1379 (1st Cir. 1983), nor can he or she present a closing argument cloaked as an opening statement. Since that is precisely what the prosecutor did here, the comments were inappropriate.

It is similarly inappropriate for a prosecutor to explicitly or implicitly express his or her own personal beliefs about the evidence. <u>United States v. Nickens</u>, 955 F.2d 112, 121 (1st Cir. 1992). The prosecutor in this case referred to masks allegedly used in the course of the charged robberies, noting that those masks were like the mask taken from one of the defendants. He asked the jurors to examine the masks he expected to be introduced into evidence and to compare them. He then said, "[W]hen you turn them over and look at them you'll see that they're hand made. And I guarantee you you're going to conclude they were made by the same people." Personal guarantees as to

conclusions the jury will draw from the evidence are inappropriate as well, as they constitute argument and at least an implicit expression of personal opinion about a matter likely to be disputed.

The prosecutor here also described in detail the alleged bank robbery techniques used by several defendants, again telling his story in a gripping, first-person, observational style:

> Shea would go to the counter -- always Shea first. This man here [pointing to Shea]. Very nimble. Over the counter, head for the vault. The vault where the big money was. And he'd be pushing tellers, sometimes whacking them with the gun. Get me into that vault! Grab a teller by the throat and say you got ten seconds before I blow her head off. Ten, nine, eight. The other tellers are of course terrorized; would scurry around and do the best they could to get into that vault."

Again, the opening in this regard was argumentative and risked being perceived as being based on personal opinion and as a blatant appeal to the jury's sympathies and emotions.

The government's opening naturally drew a volley of objections from defense counsel, most of which were sustained. The court repeatedly explained the basis for the objections to the prosecutor and instructed the jury on the proper content of an opening statement and its limited purpose. Defendants argue for a mistrial due to the prejudicial effect of the government's opening.

## B. Potential Prejudicial Effect

Challenged remarks in an opening statement are assessed in the context of the trial, in an effort to determine "the probable

10

effect the prosecutor's [remarks] would have on the jury's ability to judge the evidence fairly." United States v. Young, 470 U.S. 1, 12 (1985); accord United States v. Laboy-Delgado, 84 F.3d 22, 29 (1st Cir. 1996). In gauging the effect of inappropriate remarks a variety of factors are considered, including: (1) the severity or pervasiveness of the misconduct; (2) whether the misconduct was deliberate; (3) whether a curative instruction was given; and (4) the likely effect of the instruction on the jury. See, e.g., Young, 470 U.S. at 12; Laboy-Delgado, 84 F.3d at 29; Smith, 982 F.2d at 683; United States v. Hodge-Balwing, 952 F.2d 607, 611 (1st Cir. 1991).

Most of the prosecutor's questionable comments were objectionable because they posed a decided risk of being understood by the jury as suggestions of his own personal knowledge, opinions, and conclusions, or appeared aimed at inciting passion or poisoning the jury against the defendants. Cf., e.g., Moreno, 991 F.2d at 947 and 949-53 (Torruella, J. concurring). It must be stressed that, from the court's perspective, it was the prosecutor's style and tone (not any intentional impropriety) in delivering his dramatic opening statement that posed the risk of potential prejudice to the defendants, requiring interruption and curative instructions. Although the prosecutor was unable to quickly adjust on his feet to the repeated directions and signals to change his style and tone to avoid the risk of jury misinterpretation and possible prejudice to defendants, in the end it was his inability to

11

easily vary from his apparently fixed and well-rehearsed presentation, rather than any deliberate attempt to improperly influence the jury, that required the court to continually interrupt.

There was no observable sympathetic reaction to the prosecutor on the part of the jury arising from the interruptions, as argued by the defense. On the contrary, the court specifically observed juror reactions that made it clear that the jury both understood and followed the curative instructions.

The immediate curative instructions given during the course of the opening (in addition to the court's initial general instruction that statements by counsel are not evidence) precluded any prejudice from the prosecutor's remarks. "[P]owerful and contemporaneous instruction" is adequate to dispel any prejudice caused by a prosecutor's inappropriate opening remarks. <u>Moreno</u>, 991 F.2d at 948.

Here, the court explicitly cautioned the prosecutor after defendants' first objection as follows, "Mr. Vicinanzo, why don't you keep to what you expect the evidence to be as opposed to straying into perhaps what might be misinterpreted as personal opinion." Then, when the prosecutor continued in the same style, the court cautioned the jury:

> Ladies and gentlemen, it's not proper for an attorney in opening statement to give you their personal opinions about what the facts are or what the case is. It is proper for them to tell you what they expect the evidence to be and what the evidence will show. Mr. Vicinanzo's style of argument might be misinterpreted

12

as his expressing his personal knowledge or belief as
to what the evidence or the facts are in this case.
That would be wrong and improper.

Soon, defense counsel again objected and the court again reminded
the prosecutor:

No, Mr. Vicinanzo, you're leading people to
misunderstand that you have some sort of grasp or a
personal opinion as to what happened. You're not
telling the jury what the evidence will be, how it's
going to come in, who's going to say it; you're just
telling a story, and it's like closing argument. So
tell the jury what you expect the evidence will be, not
some narration about your personal view of the facts.

The next objection elicited another curative instruction to the
jury:

Ladies and gentlemen, it's not proper in an opening
statement for counsel to give his personal opinion of
the evidence, to testify, or to state facts that might
be known to him but aren't going to be presented. It
is proper to give you a preview of what the government
expects the evidence to be so that you'll have a
framework, so when it's presented you'll be able to
say, oh, that's the witness who's going to testify to
that. That's the story. But the style of argument
might lead you to misapprehend that what Mr. Vicinanzo
is telling you are facts personally known to him or
conveying conclusions that are his personal
conclusions, and that would be wrong and it's not
proper.

Near the end of the opening statement, the jury was cautioned
again:

I'm sorry to be repetitive, but when Mr. Vicinanzo
gives you this narrative story of what happened he's
not expressing his personal view or personal knowledge
as to what happened, he's not putting his own personal
credibility on the line, and he's not testifying,
because he's not allowed to. It's not proper. He is
permitted to tell you what the evidence will show,
where the evidence will come from, and how it fits in
the structure of the government's case. And you've
heard me say probably three or four times now that
that's the rule. I can tell you, I'm satisfied from
observing you--that you're all nodding--that you

13

understand that and that you're accepting the argument in that vein, but technically it's not proper to be telling you a narrative as if he were asserting the facts and putting his credibility behind them, because he's not going to be a witness in this case. So it's not evidence what he's saying, it's not testimony, you can't consider it during your deliberation, and I know that you're accepting what he's saying in the framework that I've provided to you; that he's telling you that there will be witnesses and there will be exhibits in this case to support his rendition of what he expects the evidence to show.

The court is satisfied that the curative instructions amply informed the jury about the appropriate scope of, and its permissible consideration of, the government's opening statement. The jurors' reaction to those instructions leaves no doubt that they fully understood and followed the instructions, and will follow them during their deliberations. The court specifically noted on the record that "I can tell from your nods you understand and appreciate that point and you can accept his comments in that vein." (Indeed, the jury understood its role and the prosecutor's role so well after the instructions were repeated that they began to anticipate and visibly react to the prosecutor's straying into inappropriate narrative and comment.) The jury was not unfairly influenced and defendants were not prejudiced by the government's opening statement. A mistrial[2] is not necessary to protect defendants' right to a fair jury trial.

## Conclusion

---

[2]To the extent that defendant Michael O'Halloran has requested alternative relief, severance or further jury instruction, his motion is denied.

Defendants' motions for a mistrial and other relief (documents no. 686, 688, 694) are denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 9, 1997

cc:  David A. Vicinanzo, Esq.
     Peter D. Anderson, Esq.
     Matthew J. Lahey, Esq.
     Bruce E. Kenna, Esq.
     Douglas J. Miller, Esq.
     Michael J. Iacopino, Esq.
     Bjorn R. Lange, Esq.
     David H. Bownes, Esq.
     Edward D. Philpot, Jr., Esq.
     United States Marshal
     United States Probation