USCA1 Opinion

 

 December 18, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1940 UNITED STATES, Appellee, v. STEVEN H. SANDERS, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ ____________________ Ray Raimo and Raimo & Murphy on brief for appellant. _________ ______________ Jeffrey R. Howard, United States Attorney, and Peter E. Papps, __________________ ______________ First Assistant United States Attorney, on Motion for Summary Disposition. ____________________ ____________________ Per Curiam. Defendant, who pled guilty to (1) ___________ being a felon in possession of firearms, 18 U.S.C. 922(g)(1), and (2) using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. 924(c)(1), appeals from his sentence. He contends that the conduct underlying the second count was unfairly counted three times in computing his sentence and that the district court improperly departed upwards under U.S.S.G. 5K2.2 (physical injury) upon finding that defendant had used a firearm different from any of those listed in the indictment to shoot his girlfriend. Finding no error, we affirm. I _ We first address defendant's triple counting argument. As defendant concedes, he was properly sentenced as an armed career offender, 18 U.S.C. 924(e), for the felon in possession count. In these circumstances, defendant's guilty plea to using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. 924(c)(1), had three effects on defendant's overall sentence. First, defendant's guilty plea to the count two offense of using or carrying firearms in connection with drug trafficking required a minimum mandatory five-year sentence to be added consecutively to the count 1 sentence. 18 U.S.C. 924(c)(1) ("Whoever, during and in relation to any . . . drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall . . . be sentenced to imprisonment for five years . . .. [T]he term of imprisonment imposed under this section [shall not] run concurrently with any other term of imprisonment . . .."); U.S.S.G. 2K2.4(a) (term of imprisonment for defendant convicted under 18 U.S.C. 924(c) is that provided by statute). Second, the guilty plea to the count two offense affected the base offense level for the count one felon in possession offense, raising it from 33 to 34. The relevant guideline follows: 4B1.4 Armed Career Criminal _____________________ . . . (b) The offense level for an armed career criminal is the greatest of: . . . (3) (A) 34, if the defendant used or possessed the firearm . . . in connection with a crime of violence or controlled substance offense . . . (B) 33, otherwise. The district court chose subsection (3)(A), with a base offense level of 34, on the ground that, the firearms listed in counts one and two being identical, defendant's guilty plea to using or carrying firearms in connection with drug trafficking established that the firearms had been used or possessed in connection with a controlled substance offense. -3- Third, the count two offense raised the criminal history category on count one (felon in possession) from IV to VI. The relevant provision follows: (c) The criminal history category for an armed career criminal is the greatest of: . . . (2) Category VI, if the defendant used or possessed the firearm . . . in connection with a crime of violence or controlled substance offense . . . U.S.S.G. 4B1.4(c). Defendant had nine criminal history points which, absent section 4B1.4(c), would have placed him in criminal history category IV, rather than VI. A _ Turning first to the second (the selection of BOL 34 rather than 33) and the third (criminal history category) increases, we see no impermissible double counting. The very same guideline, U.S.S.G. 4B1.4, plainly directs both of these increases. An armed career criminal who unlawfully uses or carries a firearm in connection with a drug trafficking offense will have both his base offense level (under subsection (b)(3)(A)) and his criminal history category (under subsection (c)(2)) augmented. This is not a circumstance where, through cross-referencing, it might be thought that double counting unintentionally resulted, but rather the case of one guideline expressly directing that a single factor -- possession of a firearm in connection with a -4- controlled substance offense --be considered in two ways. The district court correctly followed the plain language of the guideline in selecting BOL 34 and criminal history category VI. B _ Next is defendant's contention that the count two offense conduct (using or carrying a firearm during and in relation to drug trafficking) was unfairly counted twice in first raising his offense level on the felon in possession count from 33 to 34 and in then adding a minimum five-year sentence to the felon in possession sentence. Citing to U.S.S.G. 2K2.4, application note 2, as well as to several cases, defendant argues that this double counting is improper. Application note 2 to U.S.S.G. 2K2.4 applies to defendants sentenced for both an 18 U.S.C. 924(c) (using a firearm during and in relation to a crime of violence or drug trafficking crime) offense and the offense underlying the 924(c) offense. It directs that increases in the base offense level for the underlying offense not be __________________ made for possession or use of a firearm in certain circumstances: Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of a firearm (e.g., 2B3.1(b)(2)(A)-(F) ____ (Robbery)), is not to be applied in -5- respect to the guideline for the underlying offense. U.S.S.G. 2K2.4, application note 2. The note then states an exception to the exception, which we need not address since we conclude application note 2 is not applicable. This application note does not apply to defendant's count 1 (felon in possession) offense. First, it is unclear whether the felon in possession offense is an "underlying offense," within the meaning of application note 2, of the using or carrying a firearm during and in relation to a drug trafficking offense count. Rather, it is a drug trafficking offense which would most clearly be a relevant underlying offense. Defendant, however, has not been sentenced for the drug offense underlying the using or carrying of a firearm during and in relation to a drug trafficking offense, and hence no occasion arises to apply application note 2. (Had defendant been separately charged with the underlying drug offense, the application note would have directed that defendant's use of a weapon not be considered in calculating the offense level for the drug offense.) Second, even if the felon in possession charge were viewed as an offense underlying the using or carrying of a firearm during and in relation to a drug trafficking crime offense, the literal application of note 2 would not help defendant. The note directs that any "specific offense characteristic" for the underlying offense not be utilized in -6- calculating the guideline range for the underlying offense. Unlike, for example, the guidelines for aggravated assault ( 2A2.2), kidnapping ( 2A4.1), or drug trafficking ( 2D1.1) which list use or possession of a firearm as a "specific offense characteristic" raising the offense level, the felon in possession guidelines ( 2K2.1, 4B1.4) do not designate possession or use of a single weapon as a "specific offense characteristic" raising the offense level.1 Rather, possession of a weapon is an element of the crime. And section 4B1.4(b)(3)(A) where use is considered is not denominated a "specific offense characteristic." Consequently, application note 2 does not assist defendant. Even if application note 2 can not be literally applied to help defendant, defendant contends that the guidelines as a whole and case law prohibit double counting. The strongest case on which defendant relies for his contention that unforseen or unintended double counting occurs when use of a firearm during and in relation to a drug trafficking offense is used both in calculating the offense level for a felon in possession count and in adding a five- year consecutive sentence is United States v. Bell, 716 F. ______________ ____ Supp. 1207 (D. Minn. 1989). There, a defendant sentenced for ____________________ 1. Possession of three or more weapons can raise the offense level of persons sentenced pursuant to 2K2.1(b)(1). Defendant's offense level was not calculated pursuant to 2K2.1(b)(1), but rather under 4B1.4. -7- prison escape objected to the application of U.S.S.G. 4A1.1(d), which called for a two-point addition to the criminal history score when an offense was committed while under any criminal justice sentence. Defendant argued that an escape offense could only be committed while under a criminal justice sentence, so the offender's incarcerated status was necessarily already included in the base offense level. Consequently, considering it again under 4A1.1(d) was improper double counting. After reviewing various places throughout the guidelines where provisions are made to avoid double counting, the district court substantially agreed with defendant, reasoning as follows: The underlying principle is that if one provision of the guidelines accounts for an element of the offense or a specific offense characteristic, another provision designed to account for the same factor should not apply. All courts of appeals confronted with the situation in Bell have disagreed with Bell and have applied the plain ____ ____ language of the guidelines. See, e.g., United States v. ___ ____ _____________ Thomas, 930 F.2d 12, 13-14 (8th Cir. 1991) (collecting ______ cases). Nevertheless, there are other situations in which courts of appeals have refused to apply the guidelines literally when it seemed to them that a single factor had been used twice, even though the plain language of the guidelines called for the double enhancement. See, e.g., ___ ____ United States v. Hudson, 972 F.2d 504 (2d Cir. 1992) ______________ ______ -8- (impermissible double counting where the use of a non- inherently dangerous weapon (car) both made the assault an aggravated one and resulted in a specific offense characteristic 4 level increase for use of a dangerous weapon); United States v. Romano, 970 F.2d 164, 167 (6th Cir. _____________ ______ 1992) ("if certain conduct is used to enhance a defendant's sentence under one enhancement provision, the defendant should not be penalized for that same conduct again under a separate provision whether or not the Guidelines expressly prohibit taking the same conduct into consideration under two separate provisions"; separate enhancements for being an organizer or manager and more than minimal planning improper as more than minimal planning is required to qualify as an organizer). Other courts, however, when faced with situations in which a single factor has been used twice under the guidelines to compute a sentence have rejected claims of unfair double counting and have concluded that the guidelines should be applied as written. See, e.g., United States v. ___ ____ _____________ Ellen, 961 F.2d 462, 468 (4th Cir. 1992) (rejecting argument _____ that a defendant convicted of filling wetlands without a permit should not receive upward adjustments for ongoing discharge and discharge without a permit even if those factors were elements of the offense; "[b]ecause 'the Guidelines are explicit when double counting is forbidden, . -9- . . [a]n adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines expressly exclude its applicability'"), cert. denied, 113 S. Ct. 217 _____ ______ (1992); United States v. Williams, 954 F.2d 204 (4th Cir. _____________ ________ 1992) (acknowledging that the use of a metal chair to commit an assault was counted twice -- first, in selecting the base offense level and second in adding four levels for use of a dangerous weapon -- but concluding that as the guidelines have been explicit where double counting is to be avoided, an exception should not be created where none is stated); United ______ States v. Goolsby, 908 F.2d 861 (11th Cir. 1990) (even though ______ _______ enhancement factors are required elements of the crime itself (escape from custody) court will not create an exception where the Commission has not); United States v. Vickers, 891 _____________ _______ F.2d 86, 88 (5th Cir. 1989) (same). We do not think we should fashion an exception in this case where the Commission has not. That a defendant might be convicted of both being a felon in possession of a firearm and using or carrying the firearm during and in relation to drug trafficking does not seem such an unusual circumstance as to escape the Commission's attention. It is not our place to rewrite the Guidelines. II __ With the deduction of two levels for acceptance of responsibility, defendant's offense level was 32 which, at -10- criminal history category VI, called for a sentence of 210 to 262 months for the armed career criminal felon in possession offense. The district court did not sentence defendant on the felon in possession count within this guideline range, but rather departed upwards under U.S.S.G. 5K2.2 to 300 months, 38 months above the maximum guideline range. The departure was based on U.S.S.G. 5K2.2, which reads in material part as follows: Physical Injury (Policy Statement) _______________ If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. . . . Defendant challenges this departure. We turn to the evidence of physical injury. Defendant's girlfriend was shot in the head early on October 19, 1991 in her apartment. After residents of the victim's building implicated defendant in the shooting, defendant's apartment was searched pursuant to a warrant. Uncovered in a closet were the three firearms (a Beretta .22 caliber pistol, a Raven Arms .25 caliber pistol, a Marlin .22 caliber rifle) which underlay both counts of the indictment. There is no evidence that any of those firearms were used in -11- the shooting. The bullet remains lodged beyond the victim's left eye, and the only evidence concerning the assault weapon was a doctor's opinion that it was an approximately .30 caliber one. There was uncontradicted evidence that the victim is in a permanent vegetative state as a result of the shooting. After hearing eighteen witnesses at the sentencing hearing, the court found "by a preponderance of the evidence that defendant shot [victim] and that the shooting was not an accident. . . . " Defendant does not argue that the court's finding that defendant intentionally shot the victim is clearly erroneous. Nor would there be any basis for such an argument as the evidence in support of the court's findings was ample. Rather, defendant contends that his sentence can not properly be enhanced on the basis of uncharged conduct taking place at a different location (the girlfriend's apartment) from the circumstances (possession of three guns in a closet at defendnt's apartment) underlying the felon in possession count. Defendant argues that because he was not indicted for possession of the weapon used to shoot the victim, that shooting is an unrelated, separate, uncharged offense which can not properly be considered as a basis for an upward departure. We disagree. -12- Even if the weapon which wounded defendant's girlfriend was not one of those listed in the indictment, defendant's possession of it was relevant conduct, under U.S.S.G. 1B1.3(2), to the felon in possession charge. Section 1B1.3(2) directs a defendant's offense level to be determined as follows: (2) solely with respect to offenses of a character for which 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction . . . This section is applicable since felon in possession charges are subject to grouping under Section 3D1.2(d). Consequently, so long as defendant's possession of the firearm used on his girlfriend was part of the "same course of conduct" as the possession of the three firearms listed in the indictment, it is relevant conduct properly considered in setting defendant's sentence. "The 'same course of conduct' concept . . . looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected together' by common participants or by an overall scheme." United States v. Perdomo, 927 F.2d 111, 115 (2d ______________ _______ Cir. 1991). Here, defendant did repeat the same type of criminal activity -- he illegally possessed three or four separate firearms when victim was shot. We have no -13- difficulty viewing the illegal possession of the four weapons as all part of the same course of conduct. The next question is whether uncharged conduct (here, illegal possession of, arguably, a fourth firearm used to shoot victim) which constitutes relevant conduct under U.S.S.G. 1B1.3 may properly be considered as a basis for an upwards departure. It is true that the relevant conduct guideline specifically says that relevant conduct is to be used in determining the base offense level and adjustments (in chapter 3) to base offense level; it does not expressly direct whether relevant conduct may be a basis for an upward departure. U.S.S.G. 1B1.3. Nevertheless, we and other courts have approved upward departures based on relevant uncharged conduct. See, e.g., United States v. Figaro, 935 ___ ____ ______________ ______ F.2d 4 (1st Cir. 1991) (upward departure based in part on circumstance that defendant, charged with illegal entry, had been attempting to smuggle aliens at the time of the illegal entry, a separate and more serious -- but uncharged -- crime). United States v. Kim, 896 F.2d 678, 684 (2d Cir. _____________ ___ 1990) ("We conclude that, with respect to acts of misconduct not resulting in conviction, the Commission intended to preclude departures for acts bearing no relationship to the offense of conviction, but to permit departure for acts that relate in some way to the offense of conviction, even though -14- not technically covered by the definition of relevant conduct."); United States v. Shields, 939 F.2d 780, 782 (9th _____________ _______ Cir. 1991) (departure based on relevant conduct not part of counts of conviction). The principles of these cases amply cover and support a departure here on the basis of uncharged, relevant conduct. Defendant argues that sentencing him on the basis, in part, of an uncharged shooting is unconstitutional. He contends he is being punished for the shooting without a jury having determined beyond a reasonable doubt that he shot victim or the other procedural protections which would apply had defendant been indicted and tried for the shooting. We have rejected similar arguments and adhere to that position. United States v. Wright, 873 F.2d 437, 441-42 (1st Cir. 1989) _____________ ______ (government need not prove facts used in sentencing beyond a reasonable doubt). See also United States v. Galloway, 976 ___ ____ _____________ ________ F.2d 414 (8th Cir. 1992) (sentencing by considering relevant, uncharged conduct under U.S.S.G. 1B1.3(a)(2) does not violate the constitutional rights to indictment, jury trial, and proof beyond a reasonable doubt); McMillan v. ________ Pennsylvania, 477 U.S. 79 (1986) (factors used to raise a ____________ minimum sentence below the statutory maximum need not be proved beyond a reasonable doubt; preponderance standard satisfies due process and right to jury trial is not -15- implicated).2 Defendant has not received a sentence beyond the statutory maximum. Last, defendant asserts, without much elaboration, that the degree of departure was unreasonable. The court departed thirty-eight months above the top of the guideline range. The policy statement expressly advised that a "substantial" departure may be warranted for an intentionally inflicted major, permanent disability. Here, the victim is in a permanent vegetative state. A worse disability is difficult to imagine. A thirty-eight month departure for intentionally causing such a grievous injury is not unreasonable. The government's motion for summary disposition is granted and the judgment is affirmed. ________ ____________________ 2. We note further that there is no possibility that defendant will be unfairly punished twice for shooting the girlfriend. As acknowledged in the plea agreement, the Attorney General of New Hampshire agreed that defendant's federal guilty plea would "satisfy any state criminal liability in regard to the defendant's involvement in the shooting of [victim]. . . . " -16-