USCA1 Opinion

 

 November 22, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1573 UNITED STATES, Appellee, v. JESUS M. ROMERO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Cyr, Circuit Judges. ______________ ____________________ Van L. Hayhow on brief for appellant. _____________ Edwin J. Gale, United States Attorney, and Zechariah Chafee, ______________ _________________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. After purchasing multiple handguns in Rhode __________ Island and delivering them to New York for illegal resale, defendant-appellant Jesus M. Romero pled guilty to a twenty count indictment charging him with nine counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g)(1), nine counts of making a false statement to affect the purchase of firearms in violation of 18 U.S.C. 922(a)(6) and 924(a)(1)(B), and two counts of unlawful transportation of firearms in interstate commerce, in violation of 18 U.S.C. 922(a)(1)(A), 923(a), and 924(a)(1)(D). Romero appeals from the imposition of sentence, claiming that the district court erred in adding a four level enhancement to the base offense level, pursuant to U.S.S.G. 2K2.1(b)(5),1 based on a finding by the court that Romero knew or had reason to believe that the firearms would be used at some time in the future in connection with another felony offense. I. BACKGROUND ____________________ 1. The guideline provides in relevant part: If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by four levels. U.S.S.G. 2K2.1(b)(5) (Nov. 1992). We take the relevant facts from the pre-sentence investigation report (PSI) and the transcript of the sentencing hearing. See, e.g., United States v. Connell, 960 ___ ____ _____________ _______ F.2d 191, 192-93 (1st Cir. 1992). On April 24, 1992, Romero went to Continental Gun and Engraving (Continental) in Cranston, Rhode Island and purchased ten .380 caliber pistols. During the transaction, Romero filled out Bureau of Alcohol, Tobacco and Firearms Form 4473 (ATF 4473), which is required for all gun transactions with licensed gun dealers. Romero answered "no" to the question on the ATF that asked whether he had been previously convicted of a felony. In fact, Romero had been convicted of larceny of a motor vehicle, a Massachusetts felony, on June 17, 1991. On May 1, 1992, Romero returned to Continental and bought fourteen more pistols. These guns were ten .25 caliber pistols, three .380 caliber pistols, and one .22 caliber pistol. Romero again indicated on the ATF 4473 that he had not been previously convicted of a felony. The Bureau of Alcohol, Tobacco and Firearms (ATF) began investigating Romero's activities after receiving its Notice of Multiple Purchases from Continental on May 5, 1992. On May 13, 1992, the New York City Police recovered one of the guns that Romero had bought from Continental. The police found the gun in the possession of a 17 year old male during a drug raid in the Bronx. -3- Between June 4, 1992 and August 28, 1992, Romero bought six more handguns from Continental on six separate occasions. In mid-October, Romero and a man named Luis F. Lugo attempted to buy ten more handguns from Continental. This time, however, Continental refused to sell so many guns at a single time. On November 6, 1992, ATF agents observed Romero, accompanied by Lugo, buy ten .380 caliber handguns at D & C Shooting Supplies in Warwick, Rhode Island. Again, Romero filled out an ATF 4473 form in which he indicated that he had not previously been convicted of a felony. ATF agents followed Romero home and asked him to accompany them to ATF headquarters in Providence. Romero voluntarily went to the ATF headquarters. After receiving his Miranda warnings, _______ Romero acknowledged that he had bought guns from Continental the previous April and May. He stated that he got the money for those guns from an individual named William Delgado of New York City. Romero said that once he got the guns, he drove to New York City and gave them to Delgado. After defendant pled guilty on March 22, 1993, the PSI was prepared.2 The base offense level (BOL) was established at level 14, because the defendant was a "prohibited person" within the meaning of U.S.S.G. 2K2.1(a)(6). A six level ____________________ 2. The November 1992 version of the Sentencing Guidelines was used to determine Romero's guideline sentencing range. -4- increase was made to the BOL, pursuant to 2K2.1(b)(1), because 50 weapons were involved.3 The offense level was adjusted upward another four levels, pursuant to 2K2.1(b)(2), because the defendant had reason to believe that the firearms would be used or possessed in connection with another felony offense. The defendant received a three level downward adjustment for acceptance of responsibility. This yielded a total offense level of 21. Since the defendant's criminal history category was II, the guidelines sentencing range was determined to be forty-one to fifty-one months. At sentencing, Romero objected to two conclusions in the PSI. First, Romero denied attempting to purchase ten handguns from Continental in October. Romero maintained that he should be held responsible only for the forty firearms that he actually purchased. The government called as a witness a clerk from the store who testified anent the defendant's attempt to buy the guns. Defendant put on no witnesses. The district court found as fact that Romero was responsible for fifty firearms. Defendant does not appeal this finding. Romero also objected to the conclusion in the PSI that the base offense level should be increased by four levels, pursuant to U.S.S.G. 2K2.1(b)(5), because Romero ____________________ 3. The number of weapons included the forty weapons Romero purchased, as well as the ten weapons he unsuccessfully attempted to purchase from Continental in October. -5- transferred the firearms to a person in New York City with knowledge, intent or reason to believe that the guns would be used or possessed in connection with another felony offense.4 Defense counsel argued that the court should accept Romero's statement in the PSI that he had been asked by a man named Luis Lugo to assist him in buying handguns for shop and business owners in New York who wanted to purchase handguns for protection and did not wish to comply with New York's "well-known" and "difficult" licensing procedures.5 Defense counsel further argued that if Romero had been "a little bit smarter, a little bit more sophisticated," he probably would have guessed that the guns he took to New York would be used in a further crime, but that his client was too naive to understand this risk.6 ____________________ 4. Neither the defense nor the prosecution presented evidence at the sentencing hearing specific to this issue. Both counsel argued from the presentence report, which included the government's version of the offense and a statement by the defendant. 5. In his statement, Romero stated that Lugo "indicated" to him "that he knew various store owners and other people who ran offices and otherwise were business people in New York that wanted to buy guns." Romero also stated that he was "shocked to learn that one of the guns involved had been recovered during a drug arrest in New York city" and never would have entered into the arrangement if he had known Lugo intended to sell the guns to drug dealers. 6. At the time of the offense, Romero was 21 years old. He had completed eight years of education in Spanish-speaking schools in Puerto Rico. -6- The district court overruled defense counsel's objection and found that Romero knew or had reason to believe that the firearms he purchased and transported to New York would be used at some time in the future in connection with another felony offense. In support of this ruling, the court stated: I've already indicated I can't think of any other reason for having the firearms except to fire them at some person. There may be some people in our society who do not understand that when one delivers 10 handguns to New York City that they could be expected to be used in the perpetration of a crime. But they are few and far between and the Defendant is not one of them. He had to know that there was no legitimate purpose here involved. That the firearms would ultimately end up in the possession of people who couldn't otherwise get them, and that includes felons, and that itself is a felony. So that it seems to me the Defendant had every reason to believe that what he was doing was wrong, and to know it. So I overrule that objection. The court adopted the findings and recommendations contained in the PSI and sentenced the defendant to forty-one months imprisonment, the bottom end of the applicable guideline sentencing range. II. DISCUSSION On appeal, Romero argues that there was insufficient support for the district court's finding that he knew or had reason to believe that the guns would be used in a future felony. We disagree. An appellate tribunal "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application -7- of the guidelines to the facts." 18 U.S.C. 3742(e) (1988). We have interpreted this statute as requiring, in most instances, that the court of appeals review a trial court's application of a sentencing guideline to the facts only for clear error.7 See, e.g., United States v. Mariano, 983 F.2d ___ ____ _____________ _______ 1150, 1158 (1st Cir. 1993); United States v. Ruiz, 905 F.2d _____________ ____ 499, 507 (1st Cir. 1990). In the instant case, the record adequately supports the district court's factual finding that the defendant must have understood that the weapons he delivered to New York City would wind up in the hands of criminals for use in future crimes. The defendant was dealing with persons of unknown backgrounds who asked him to get involved in a clandestine operation delivering multiple weapons to a city with a high crime rate. The weapons were inexpensive handguns, unsuited for hunting or legitimate pursuits, and unlikely to be used in such quantities for anything but illegal purposes. The defendant admittedly knew that the guns would be resold to persons who wished to buy weapons illegally. The district court was not required to ____________________ 7. To be sure, Romero also argues, as a matter of law, that the scienter requirement of 2K2.1(b)(5)--that the defendant have "knowledge, intent, or reason to believe" that the firearm will be used in a future felony offense--should be narrowly interpreted to require that the defendant have subjective knowledge. We review a guideline's meaning and scope de novo. See United States v. Brewster, 1 F.3d 51, 54 _______ ___ _____________ ________ (1st Cir. 1993). Romero, however, cites no meaningful authority for his position. At any rate, we need not address this asseveration as, here, the district court supportably found that Romero possessed such subjective knowledge. -8- discard common sense and accept the defendant's assertion that he believed that the guns would be purchased by legitimate businessmen for self-protection. See United ___ ______ States v. Sklar, 920 F.2d 107, 112 (1st Cir. 1990) (court ______ _____ need not "divorce [itself] from common sense"). Romero also argues that it was impermissible double counting to predicate the 2K2.1(b)(5) increase on the number of weapons involved since the 2K2.1(b)(1) increase was based on this same fact. But the district court relied on much more than the number of weapons involved--for example, the nature of the weapons and their destination8-- in concluding that Romero knew, or had reason to believe, that the weapons would be used in future felony offenses. We therefore find no impermissible double counting.9 Cf. ___ United States v. Balogun, 989 F.2d 20, 23-24 (1st Cir. 1993) _____________ _______ (finding no improper double counting where fact already accounted for in previous enhancement was one of several factors relied upon by the court in support of additional enhancement); United States v. Sanders, 982 F.2d 4, 8 (1st _____________ _______ Cir. 1992) (concluding that, as the guidelines have been ____________________ 8. The district court noted that the weapons involved were "cheap handgun[s]" which have only one use--injuring or killing people. 9. We further reject, as without merit, Romero's contention that the illegal behavior which provided the foundation for his conviction was subsequently used to justify the 2K2.1(b)(5) enhancement. -9- explicit where double counting is to be avoided, an exception should not be created where none is stated). Finally, Romero contends that the 2K2.1(b)(5) increase cannot be predicated on his knowledge that the weapons would be illegally resold. Defendant correctly points out that Application Note 18 of the Commentary to U.S.S.G. 2K2.1 states in relevant part: As used in subsection (b)(5) and (c)(1), "another felony offense" and "another offense" refer to offenses other than explosives or firearms possession or trafficking offenses. The district court, however, heeded this mandate and viewed the likely range of felonious activity as far broader then mere illegal possession or trafficking. Finding no error, we affirm the judgment below. See ______ ___ Loc. R. 27.1. -10-