**UNITED STATES of America, Appellee,**

v.

**Steven H. SANDERS, Defendant, Appellant.**

No. 99–1382.

United States Court of Appeals, First Circuit.

Heard Nov. 1, 1999.

Decided Dec. 14, 1999.

Mark E. Howard, Assistant United States Attorney, with whom Paul M. Gagnon, United States Attorney, and Peter E. Papps, First Assistant United States Attorney, were on brief for the United States.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and
BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

The issue presented on this appeal is whether an upward departure in sentencing was reasonable in amount and whether the choice of amount was adequately explained. The case began in 1992 when the defendant, Steven Sanders, pled guilty to federal charges of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and using a firearm during a drug trafficking crime, 18 U.S.C. § 924(c). The charges arose from a violent incident in which Sanders shot his girlfriend, Brenda Bayko Harnum, in the back of the head at point-blank range; although she survived, she was left permanently and terribly impaired.

At the original sentencing in 1992, the district court (Judge Devine) sentenced Sanders to 360 months imprisonment. This comprised a maximum guideline range sentence for the felon in possession offense (computed as 262 months), the five year consecutive mandatory sentence for use of a firearm during a drug crime (60 months), and a further upward departure (38 months) under U.S.S.G. § 5K2.2 for causing significant personal injury. On direct review, we sustained the lawfulness of the sentence, including the departure. *United States v. Sanders*, 982 F.2d 4 (1st Cir.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Thereafter, Sanders petitioned for post-conviction relief under 28 U.S.C. § 2255 to undo his conviction for using a firearm during a drug crime. The basis for the attack was the Supreme Court's interven-

Bjorn Lange, Assistant Federal Defender, Federal Defender Office, for appellant.

ing decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which construed the term "use" to require active employment of the weapon during the drug crime. Because Sanders' guilty plea had been based on a less demanding definition then in force in this circuit, the district court vacated Sanders' conviction on that count in May 1998, *see Sanders v. United States,* No. 97–73–SD (D.N.H. May 5, 1998), and Sanders then sought resentencing, despite a warning from the district court that this might not be in his best interests.

On March 4, 1999, after a hearing, Sanders was resentenced by Judge Barbadoro (who inherited the case on Judge Devine's death) to 324 months on the felon in possession count. Based on calculations not here in dispute, the district court computed Sanders' initial guideline range for the offense as 135–168 months, but found this trumped by the minimum mandatory sentence of 15 years for the offense to which Sanders was subject because of his prior convictions. 18 U.S.C. § 924(e)(1).[1] From this starting point of 180 months, the district court then departed upward by 144 months, again based on significant physical injury to the victim, to arrive at the final 324–month sentence.

Sanders now appeals to challenge his new sentence. He does not dispute the starting point for the departure or the decision to depart, constrained on the latter issue by this court's decision on Sanders' earlier appeal, *see Sanders,* 982 F.2d at 8–10. Rather, Sanders' able counsel attacks the magnitude of the departure (144 months), which practically doubled the guideline maximum (168 months) and greatly exceeded the mandatory minimum sentence (180 months). He argues that this is unprecedented and unreasonable and, alternatively, that it is inadequately explained.

The extent of a departure is by statute subject to review for reasonableness. *See* 18 U.S.C. § 3742(f)(2); *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The case law calls for a reasonable explanation by the district court as well as a reasonable result. *See United States v. Brewster,* 127 F.3d 22, 31–32 (1st Cir.1997), *cert. denied,* 523 U.S. 1086, 118 S.Ct. 1543, 140 L.Ed.2d 691 (1998). Where (as here) the raw facts are not in dispute, the end result is usually a judgment call based on all of the pertinent circumstances and is reviewed for abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

In this case, the circumstances that gave rise to the departure were that Sanders sought to murder Harnum, nearly succeeded, and inflicted upon her an awful and continuing injury. There is no doubt that this was a permissible basis for departure. U.S.S.G. § 5K2.2, relied on by the district court, provides at the outset that "[i]f significant physical injury resulted, the court may increase the sentence above the authorized guideline range." It continues, in pertinent part, as follows:

> The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate.

The two relevant elements in this explanation are intentionality and the extent of harm, and the district court made findings as to both elements. As to intent, the court rejected as preposterous Sanders'

---

**1.** This mandatory minimum sentence applies to felon in possession convictions where the defendant has three prior convictions for either "a violent felony or a serious drug offense," or both, committed on different occasions. Because Sanders does not dispute this determination, we have no reason to discuss how it was arrived at or why Judge Barbadoro and Judge Devine differed in computing the initial guideline range.

explanation that the back of the head shooting was an accident resulting from a struggle. It found explicitly that Sanders had intended to kill Harnum, although it described this as an attempt at murder in the second degree, rather than in the first, because it apparently grew out of a quarrel and premeditation was uncertain. Neither side disputes this finding on appeal.

At the time of the original sentencing, Harnum was in a vegetative state and was not expected to survive. By the second sentencing, Harnum had improved somewhat but her condition remained tragic. The district court found that Harnum "remains profoundly disabled in a way that is horribly damaging to her ability to enjoy any semblance of a normal life, and [that] this disability is not going to significantly change over time." The court described Harnum's confinement to a wheelchair with splints on both legs and one wrist, her need to wear a mouth guard to protect her teeth from constant grinding, and her need for 24–hour–a–day care including mealtime supervision to prevent her from choking on her food.

As a result of her condition, Harnum—a single mother—could not care for her two young children and was unable to have them live with her. The government plausibly sought a separate departure for psychological injury to the children, *see* U.S.S.G. § 5K2.3, but the district court declined the invitation for lack of specific evidence as to the children's condition. However, the court did conclude that Harnum's inability to care for or live with her children was a further indication of the injury inflicted upon her and thus properly considered in measuring the extent of the departure under U.S.S.G. § 5K2.2. The facts as to Harnum's condition are not disputed on this appeal.

In its sentencing, the court discussed at some length the facts just recited as to intention and harm. It explained its general approach as asking what addition should be made—based on the attempted murder and its consequences for Harnum—to the 15 year, statutorily prescribed sentence for someone who was an ordinary felon in possession with a criminal record that had triggered the minimum sentence; and the court noted the minimum sentence of 15 years that Harnum could have received in state court in New Hampshire for attempted murder. *See* N.H.Rev.Stat. Ann. c. 651:2(II)(d), (II-c) (1996).[2] On this basis, the district court departed upward by 144 months.

The district court's rationale is thus fairly straightforward. With no shooting at all, Sanders' gun possession and his record required a 15–year sentence; based on the attempted murder and the terrible harm done, the court added 12 more years, resulting in a 27–year sentence. This was a few years less than the 30 years that Sanders apparently might have been given as a maximum under New Hampshire law for attempted murder, *see* N.H.Rev.Stat. Ann. c. 651:2 (II-c), but a few years more than the 22 and ½ years that defense counsel said was the likely sentence if all of Sanders' gun related conduct had been considered in a New Hampshire state court.

In many cases, a judge does not explain precisely why he chose one number rather than another for a departure; and such failures are often justified because the underlying factors did not lend themselves to precise measurement. *See United States v. Rostoff,* 53 F.3d 398, 408 (1st Cir.1995); *United States v. Aymelek,* 926 F.2d 64, 70 (1st Cir.1991). But in this case, the district court did use a rationale that lent itself to measurement, namely, what likely would have happened in state court if (as usually happens) the attempted murder had been independently prosecuted under state law. There is thus nothing to the claim that the departure was not fully explained.

**2.** As the district court pointed out, it was part of the bargain leading to Sanders' guilty plea in federal court that the state would not separately prosecute him, so there is no risk that Sanders will be punished again for the same shooting.

■ Reasonableness of the result is a different matter. Sanders' broadest argument on this score is that the departure itself is huge and without precedent. There is no doubt that the departure is large both in absolute terms (144 months) and in relation to the pre-departure figure (almost double if one starts with the guideline maximum or about 80 percent if— perhaps more appropriately—one begins with the statutory minimum). But there is no lack of precedent for departures as large and larger,[3] and the reason why it is so large is easily explained.

Taken alone, being a felon in possession is a serious yet still modest crime; but it is far more severely punished (by a fifteen year minimum) when coupled with a history that includes three other crimes involving drugs or violence. Yet many would think that this composite offense is itself less serious than the further offense of attempted murder coupled with horrendous physical harm to the victim. It is this second offense that is the effective measure of the departure. Assuming the premise that it is at least as serious as the first, the near doubling is easily explained. *Cf. United States v. Lombard*, 102 F.3d 1 (1st Cir.1996), *cert. denied*, 520 U.S. 1266, 117 S.Ct. 2437, 138 L.Ed.2d 197 (1997).

Sanders' better argument is narrower. He argues that under the federal guidelines, conviction for second degree murder would have produced a guideline range with a maximum far below the 324–month sentence; the proper figure for comparison is probably 235 months rather than the 168 months claimed by defense counsel,[4] but even so the jump from 235 months to 324 months is a large one. And the 235–month sentence builds in a criminal history adjustment based on Sanders' prior crimes (which the district court found to place him in category IV), although it takes no account of his most recent felon in possession offense.

Yet all this proves is that there are competing yardsticks that might have been used in determining a departure and that more than one of them might reasonably be selected. Here, the second degree murder analogy can easily be criticized as too kind to Sanders: it accounts for the deliberate attempt to murder his victim— indeed, over-accounts in one sense since Harnum did not die—but ignores entirely the peculiar brutality of the crime and the terrible permanent harm inflicted upon Harnum and the awful consequences of that harm (*e.g.*, the loss of her children); and these elements could themselves warrant a very substantial upward departure even if one treats the wicked intent as already covered by the guideline sentence.

The concepts of "reasonable" departure and "abuse of discretion" reflect the reality that there are often a set of permissible outcomes available to the district court. *See Rostoff*, 53 F.3d at 409. This is just such a case. Depending on how it reasoned, the district court could have chosen a smaller departure or, possibly, a somewhat larger one without courting reversal. In all events, we think that its conduct of the proceeding and careful delineation of issues and choices were exemplary and that the result was well within its authority.

■ There remains one further issue raised not by defense counsel but by Sanders himself in a pro se brief. Recall that the district court set aside under section 2255 Sanders' original conviction for using a firearm in connection with a drug crime.

---

3. *E.g., United States v. Carrion–Cruz*, 92 F.3d 5, 6 (1st Cir.1996) (approving upward departure from guideline maximum of 365 months to life imprisonment for a youthful offender); *Rostoff*, 53 F.3d at 411 (collecting cases approving upward departures as high as 380 percent times the guideline maximum).

4. Defense counsel assumes that the offense level of 33 for second degree murder would have been reduced to 30 for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b); but while Sanders did plead guilty to the crime of being a felon in possession, he flatly rejected responsibility for intentionally attempting to kill his victim.

While federal sentencing usually reflects a package approach, that offense carried a statutorily mandated separate penalty of 60 months, which fell with the overturning of the conviction. Judge Barbadoro was prepared to strike the 60–month separate sentence but otherwise leave intact Judge Devine's earlier sentence, which would have left Sanders with a 300–month sentence.

Sanders nevertheless insisted on resentencing in the teeth of Judge Barbadoro's warning that Sanders might end up with more than 300 months, depending on the facts and the court's exercise of its own judgment. That is just what happened. The new sentence was 324 months, less than the total sentence Judge Devine had imposed but larger than the amount nominally attributable to the felon in possession count and the departure under Judge Devine's sentencing scheme. This, Sanders claims in his pro se brief, was unconstitutional.

Sanders' claim rests—or, more accurately, seeks to rest—upon *North Carolina v. Pearce*, 395 U.S. 711, 725–26, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). There, a defendant was tried and convicted, appealed, won a new trial, and after reconviction was given a higher sentence. To protect against the threat of punishing a defendant for appealing, the Supreme Court invoked a presumption of vindictiveness and said that a higher sentence after retrial must be explained based upon objective information, such as new evidence bearing on the sentence not available at the initial trial.

The Supreme Court has yet to consider the situation in which there is not a subsequent trial and where the resentencing is by a different judge and is occasioned by a successful collateral attack on one of the underlying convictions,[5] but we will assume *dubitante* that the presumption of vindictiveness applies in such a case. If so, Sanders might have an argument that, subject always to an adequate explanation justifying a larger sentence, his second sentence could not exceed 360 months. But the second sentence did not exceed 360 months.

Sanders' original sentence, like federal sentences in general, was a package. *See United States v. Rodriguez*, 112 F.3d 26, 28–30 (1st Cir.), *cert. denied*, 522 U.S. 895, 118 S.Ct. 237, 139 L.Ed.2d 168 (1997). True, by statute the district court had to impose a 60–month consecutive sentence for the use of a firearm in a drug crime, but that did not make this component irrelevant to setting the rest of the sentence. In deciding just how far to depart at the original sentencing, the district court considered how far it wanted to go above the sentence that Sanders would otherwise serve, which included the 60 months (as well as the pre-departure sentence for the felon in possession offense).

In one case after another, this and other courts have permitted a new sentence to be calculated after one element has been eliminated, without treating *parts* of the prior sentence as a limit on the new one.[6] In our view, the *Pearce* limitation, where it exists, only constrains the bottom line of the new sentence from exceeding the bottom line of the old one. We add only that in this case new information about the extent of the victim's conscious suffering was available to the district court that

---

5. In *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the Supreme Court overruled a prior decision which had applied *Pearce* 's rule to a defendant who had initially pled guilty and, after successfully appealing his conviction, was tried, convicted, and given a higher sentence. Considering the matter afresh, *Alabama v. Smith* found that a higher sentence after withdrawal of the guilty plea did not warrant a presumption of vindictiveness. *See id.* at 801–03, 109 S.Ct. 2201.

6. *See United States v. Townsend*, 178 F.3d 558, 566–69 (D.C.Cir.1999); *United States v. Davis*, 112 F.3d 118, 120–23 (3d Cir.), *cert. denied*, 522 U.S. 888, 118 S.Ct. 224, 139 L.Ed.2d 156 (1997); *Rodriguez*, 112 F.3d at 28–30; *Woodhouse v. United States*, 109 F.3d 347, 347–48 (7th Cir.), *cert. denied*, 522 U.S. 851, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997).

would satisfy *Pearce* even if its constraint did apply.

*Affirmed.*