USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-1382

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 STEVEN H. SANDERS,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Paul J. Barbadoro, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 
 Bjorn Lange, Assistant Federal Defender, Federal Defender
Office, for appellant.
 Mark E. Howard, Assistant United States Attorney, with whom
Paul M. Gagnon, United States Attorney, and Peter E. Papps, First
Assistant United States Attorney, were on brief for the United
States.
 

December 14, 1999

 
 
 BOUDIN, Circuit Judge. The issue presented on this
appeal is whether an upward departure in sentencing was reasonable 
in amount and whether the choice of amount was adequately
explained. The case began in 1992 when the defendant, Steven
Sanders, pled guilty to federal charges of being a felon in
possession of a firearm, 18 U.S.C. 922(g)(1), and using a firearm
during a drug trafficking crime, 18 U.S.C. 924(c). The charges
arose from a violent incident in which Sanders shot his girlfriend,
Brenda Bayko Harnum, in the back of the head at point-blank range;
although she survived, she was left permanently and terribly
impaired.
 At the original sentencing in 1992, the district court
(Judge Devine) sentenced Sanders to 360 months imprisonment. 
This comprised a maximum guideline range sentence for the felon in
possession offense (computed as 262 months), the five year
consecutive mandatory sentence for use of a firearm during a drug
crime (60 months), and a further upward departure (38 months) under 
U.S.S.G. 5K2.2 for causing significant personal injury. On
direct review, we sustained the lawfulness of the sentence,
including the departure. United States v. Sanders, 982 F.2d 4 (1st
Cir. 1992), cert. denied, 508 U.S. 963 (1993).
 Thereafter, Sanders petitioned for post-conviction relief
under 28 U.S.C. 2255 to undo his conviction for using a firearm 
during a drug crime. The basis for the attack was the Supreme
Court's intervening decision in Bailey v. United States, 516 U.S.
137 (1995), which construed the term "use" to require active
employment of the weapon during the drug crime. Because Sanders'
guilty plea had been based on a less demanding definition then in
force in this circuit, the district court vacated Sanders'
conviction on that count in May 1998, see Sanders v. United States,
No. 97-73-SD (D.N.H. May 5, 1998), and Sanders then sought
resentencing, despite a warning from the district court that this
might not be in his best interests.
 On March 4, 1999, after a hearing, Sanders was
resentenced by Judge Barbadoro (who inherited the case on Judge
Devine's death) to 324 months on the felon in possession count. 
Based on calculations not here in dispute, the district court
computed Sanders' initial guideline range for the offense as 135-
168 months, but found this trumped by the minimum mandatory
sentence of 15 years for the offense to which Sanders was subject
because of his prior convictions. 18 U.S.C. 924(e)(1). From
this starting point of 180 months, the district court then departed
upward by 144 months, again based on significant physical injury to
the victim, to arrive at the final 324-month sentence.
 Sanders now appeals to challenge his new sentence. He
does not dispute the starting point for the departure or the
decision to depart, constrained on the latter issue by this court's
decision on Sanders' earlier appeal, see Sanders, 982 F.2d at 8-10. 
Rather, Sanders' able counsel attacks the magnitude of the
departure (144 months), which practically doubled the guideline
maximum (168 months) and greatly exceeded the mandatory minimum
sentence (180 months). He argues that this is unprecedented and
unreasonable and, alternatively, that it is inadequately explained. 
 The extent of a departure is by statute subject to review
for reasonableness. See 18 U.S.C. 3742(f)(2); United States v.
Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 493 U.S.
862 (1989). The case law calls for a reasonable explanation by the
district court as well as a reasonable result. See United States
v. Brewster, 127 F.3d 22, 31-32 (1st Cir. 1997), cert. denied, 118
S. Ct. 1543 (1998). Where (as here) the raw facts are not in
dispute, the end result is usually a judgment call based on all of
the pertinent circumstances and is reviewed for abuse of
discretion. See Koon v. United States, 518 U.S. 81, 99 (1996). 
 In this case, the circumstances that gave rise to the
departure were that Sanders sought to murder Harnum, nearly
succeeded, and inflicted upon her an awful and continuing injury. 
There is no doubt that this was a permissible basis for departure. 
U.S.S.G. 5K2.2, relied on by the district court, provides at the
outset that "[i]f significant physical injury resulted, the court
may increase the sentence above the authorized guideline range." 
It continues, in pertinent part, as follows:
 The extent of the increase ordinarily should
 depend on the extent of the injury, the degree
 to which it may prove permanent, and the
 extent to which the injury was intended or
 knowingly risked. When the victim suffers a
 major, permanent disability and when such
 injury was intentionally inflicted, a
 substantial departure may be appropriate.

 The two relevant elements in this explanation are
intentionality and the extent of harm, and the district court made
findings as to both elements. As to intent, the court rejected as
preposterous Sanders' explanation that the back of the head
shooting was an accident resulting from a struggle. It found
explicitly that Sanders had intended to kill Harnum, although it
described this as an attempt at murder in the second degree, rather
than in the first, because it apparently grew out of a quarrel and
premeditation was uncertain. Neither side disputes this finding on
appeal.
 At the time of the original sentencing, Harnum was in a
vegetative state and was not expected to survive. By the second
sentencing, Harnum had improved somewhat but her condition remained
tragic. The district court found that Harnum "remains profoundly
disabled in a way that is horribly damaging to her ability to enjoy
any semblance of a normal life, and [that] this disability is not
going to significantly change over time." The court described
Harnum's confinement to a wheelchair with splints on both legs and
one wrist, her need to wear a mouth guard to protect her teeth from
constant grinding, and her need for 24-hour-a-day care including
mealtime supervision to prevent her from choking on her food.
 As a result of her condition, Harnum--a single mother--
could not care for her two young children and was unable to have
them live with her. The government plausibly sought a separate
departure for psychological injury to the children, see U.S.S.G. 
5K2.3, but the district court declined the invitation for lack of
specific evidence as to the children's condition. However, the
court did conclude that Harnum's inability to care for or live with
her children was a further indication of the injury inflicted upon
her and thus properly considered in measuring the extent of the
departure under U.S.S.G. 5K2.2. The facts as to Harnum's
condition are not disputed on this appeal.
 In its sentencing, the court discussed at some length the
facts just recited as to intention and harm. It explained its
general approach as asking what addition should be made--based on
the attempted murder and its consequences for Harnum--to the 15
year, statutorily prescribed sentence for someone who was an
ordinary felon in possession with a criminal record that had
triggered the minimum sentence; and the court noted the minimum
sentence of 15 years that Harnum could have received in state court
in New Hampshire for attempted murder. See N.H. Rev. Stat. Ann. c.
651:2 (II)(d), (II-c) (1996). On this basis, the district court
departed upward by 144 months.
 The district court's rationale is thus fairly
straightforward. With no shooting at all, Sanders' gun possession
and his record required a 15-year sentence; based on the attempted
murder and the terrible harm done, the court added 12 more years,
resulting in a 27-year sentence. This was a few years less than
the 30 years that Sanders apparently might have been given as a
maximum under New Hampshire law for attempted murder, see N.H. Rev.
Stat. Ann. c. 651:2 (II-c), but a few years more than the 22 and
1/2 years that defense counsel said was the likely sentence if all
of Sanders' gun related conduct had been considered in a New
Hampshire state court.
 In many cases, a judge does not explain precisely why he
chose one number rather than another for a departure; and such
failures are often justified because the underlying factors did not
lend themselves to precise measurement. See United States v.
Rostoff, 53 F.3d 398, 408 (1st Cir. 1995); United States v.
Aymelek, 926 F.2d 64, 70 (1st Cir. 1991). But in this case, the
district court did use a rationale that lent itself to measurement,
namely, what likely would have happened in state court if (as
usually happens) the attempted murder had been independently
prosecuted under state law. There is thus nothing to the claim
that the departure was not fully explained.
 Reasonableness of the result is a different matter. 
Sanders' broadest argument on this score is that the departure
itself is huge and without precedent. There is no doubt that the
departure is large both in absolute terms (144 months) and in
relation to the pre-departure figure (almost double if one starts
with the guideline maximum or about 80 percent if--perhaps more
appropriately--one begins with the statutory minimum). But there
is no lack of precedent for departures as large and larger, and
the reason why it is so large is easily explained.
 Taken alone, being a felon in possession is a serious yet
still modest crime; but it is far more severely punished (by a
fifteen year minimum) when coupled with a history that includes
three other crimes involving drugs or violence. Yet many would
think that this composite offense is itself less serious than the
further offense of attempted murder coupled with horrendous
physical harm to the victim. It is this second offense that is
the effective measure of the departure. Assuming the premise that
it is at least as serious as the first, the near doubling is easily
explained. Cf. United States v. Lombard, 102 F.3d 1 (1st Cir.
1996), cert. denied, 520 U.S. 1266 (1997).
 Sanders' better argument is narrower. He argues that
under the federal guidelines, conviction for second degree murder
would have produced a guideline range with a maximum far below the
324-month sentence; the proper figure for comparison is probably
235 months rather than the 168 months claimed by defense counsel,
but even so the jump from 235 months to 324 months is a large one. 
And the 235-month sentence builds in a criminal history adjustment
based on Sanders' prior crimes (which the district court found to
place him in category IV), although it takes no account of his most
recent felon in possession offense.
 Yet all this proves is that there are competing
yardsticks that might have been used in determining a departure and
that more than one of them might reasonably be selected. Here, the
second degree murder analogy can easily be criticized as too kind
to Sanders: it accounts for the deliberate attempt to murder his
victim--indeed, over-accounts in one sense since Harnum did not
die--but ignores entirely the peculiar brutality of the crime and
the terrible permanent harm inflicted upon Harnum and the awful
consequences of that harm (e.g., the loss of her children); and
these elements could themselves warrant a very substantial upward
departure even if one treats the wicked intent as already covered
by the guideline sentence.
 The concepts of "reasonable" departure and "abuse of
discretion" reflect the reality that there are often a set of
permissible outcomes available to the district court. See Rostoff,
53 F.3d at 409. This is just such a case. Depending on how it
reasoned, the district court could have chosen a smaller departure
or, possibly, a somewhat larger one without courting reversal. In
all events, we think that its conduct of the proceeding and careful
delineation of issues and choices were exemplary and that the
result was well within its authority.
 There remains one further issue raised not by defense
counsel but by Sanders himself in a pro se brief. Recall that the
district court set aside under section 2255 Sanders' original
conviction for using a firearm in connection with a drug crime. 
While federal sentencing usually reflects a package approach, that
offense carried a statutorily mandated separate penalty of 60
months, which fell with the overturning of the conviction. Judge
Barbadoro was prepared to strike the 60-month separate sentence but
otherwise leave intact Judge Devine's earlier sentence, which would
have left Sanders with a 300-month sentence.
 Sanders nevertheless insisted on resentencing in the
teeth of Judge Barbadoro's warning that Sanders might end up with
more than 300 months, depending on the facts and the court's
exercise of its own judgment. That is just what happened. The new
sentence was 324 months, less than the total sentence Judge Devine
had imposed but larger than the amount nominally attributable to
the felon in possession count and the departure under Judge
Devine's sentencing scheme. This, Sanders claims in his pro se
brief, was unconstitutional.
 Sanders' claim rests--or, more accurately, seeks to rest-
-upon North Carolina v. Pearce, 395 U.S. 711, 725-26 (1969). 
There, a defendant was tried and convicted, appealed, won a new
trial, and after reconviction was given a higher sentence. To
protect against the threat of punishing a defendant for appealing,
the Supreme Court invoked a presumption of vindictiveness and said
that a higher sentence after retrial must be explained based upon
objective information, such as new evidence bearing on the sentence
not available at the initial trial.
 The Supreme Court has yet to consider the situation in
which there is not a subsequent trial and where the resentencing is
by a different judge and is occasioned by a successful collateral
attack on one of the underlying convictions, but we will assume
dubitante that the presumption of vindictiveness applies in such a
case. If so, Sanders might have an argument that, subject always
to an adequate explanation justifying a larger sentence, his second
sentence could not exceed 360 months. But the second sentence did
not exceed 360 months.
 Sanders' original sentence, like federal sentences in
general, was a package. See United States v. Rodriguez, 112 F.3d
26, 28-30 (1st Cir.), cert. denied, 522 U.S. 895 (1997). True, by
statute the district court had to impose a 60-month consecutive
sentence for the use of a firearm in a drug crime, but that did not
make this component irrelevant to setting the rest of the sentence. 
In deciding just how far to depart at the original sentencing, the
district court considered how far it wanted to go above the
sentence that Sanders would otherwise serve, which included the 60
months (as well as the pre-departure sentence for the felon in
possession offense).
 In one case after another, this and other courts have
permitted a new sentence to be calculated after one element has
been eliminated, without treating parts of the prior sentence as a
limit on the new one. In our view, the Pearce limitation, where
it exists, only constrains the bottom line of the new sentence from
exceeding the bottom line of the old one. We add only that in this
case new information about the extent of the victim's conscious
suffering was available to the district court that would satisfy
Pearce even if its constraint did apply.
 Affirmed.