**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 10-1448

UNITED STATES,

Appellee,

v.

WILLIAM HOLMES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Robert C. Andrews on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

July 7, 2011

**Per Curiam**. We have reviewed the record and the parties' submissions, and we affirm.

The appellant, William Holmes ("Holmes"), raises a number of challenges to his sentence. He first challenges the district court's conclusion that he possessed a handgun during each of two drug transactions with a confidential informant ("CI"). He argues that the evidence presented by the government was unreliable. We see no clear error. The discrepancies as to the date of the second drug transaction and the caliber of the weapon seized from a drug partner's apartment may permissibly be viewed as rather minor discrepancies and were explained by the witnesses: the date discrepancy was allegedly due to a typographical error and the discrepancy with regard to the size of the weapon was explained by the fact that a .22 caliber weapon and a .25 caliber are similar in appearance. There is nothing in the record which would require this court to question those explanations, and the district court was in the best position to evaluate whether the witnesses who gave those explanations were credible. The CI's alleged offer to leave town in exchange for $12,000 adversely affected his credibility, but the court did not rely solely on the CI's claim that Holmes had a gun with him at each of the two drug transactions. Rather, the CI's claim was corroborated by an agent's testimony that the CI was wearing a wire during both transactions, that she was monitoring the wire during both transactions, and that she heard Holmes refer

on the first occasion to the fact that he was carrying a firearm. The court also listened to the recordings of those controlled transactions. The CI's claim that Holmes carried a different firearm to each of the two transactions was corroborated by the fact that the CI described the two weapons (a small caliber derringer and a 9 mm or .45 caliber handgun with a brown wooden handle), and that weapons matching those descriptions were later seized from Holmes' co-conspirators. Thus, we see no clear error in the court's conclusion that Holmes possessed the handguns.

We also see no error in the district court's conclusion that Holmes constructively possessed a shotgun found under his co-conspirator's bed. "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (internal quotation marks and citations omitted). Holmes pled guilty to illegal possession of shotgun ammunition; that ammunition was found in Holmes' bedroom; and the ammunition matched the shotgun found in the other bedroom in his home. That second bedroom was unlocked, and its occupant, one William Hopkins ("Hopkins"), was apparently Holmes' partner in a drug-dealing business. One ounce of cocaine was found in Hopkins' closet along with a handgun that may have been the same gun that Holmes carried during one of the two controlled drug transactions. The district

-3-

court reasonably could have concluded from this evidence that the two drug partners -- Holmes and Hopkins -- appeared to share ready access to the entire apartment and that the tools of their trade – the drugs they sold and the weapons and ammunition used to protect those drugs – were shared between them and scattered throughout the apartment. A small caliber handgun that Holmes carried with him during the other controlled drug transaction may have been the same gun later found in an apartment occupied by another drug-dealing partner, one Michael Pressey ("Pressey"); Holmes was seen routinely entering this apartment throughout this investigation in order to retrieve drugs. This is further indication that the three partners (Holmes, Hopkins and Pressey) all shared access to the tools of their trade, i.e., the drugs and the guns used to protect those drugs. Given all of this, we see no clear error in the district court's conclusion that Holmes knowingly had the power and the intent to exercise control over the shotgun. Thus, we see no error in the court's conclusion that Holmes had constructive possession of the shotgun found under Hopkins' bed. See id. ("[T]here must be some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it.").

Finally, Holmes argues that even if he did possess the two handguns and did constructively possess the shotgun, the district court erred in imposing an enhancement under U.S.S.G. §

2K2.1(b)(1)(A) for possession of three to seven firearms. He notes that he was only convicted of illegal possession of ammunition, so any possession by him of firearms should not have been treated as relevant conduct. See U.S.S.G. § 1B1.3(a)(2). Holmes' possession of firearms can be considered relevant conduct, and the enhancement in U.S.S.G. § 2K2.1(b)(1)(A) may be applied, if 1) U.S.S.G. § 3D1.2(d) would require a sentencing court to group any possession of firearms with his possession of ammunition, had Holmes been charged additionally with possessing the three guns in question, and 2) his possession of those three guns was part of the same course of conduct or common scheme or plan as his possession of the shotgun ammunition. See U.S.S.G. § 1B1.3(a)(2).

The first requirement is met here, as subsection 3D1.2(d) would have required grouping of any gun possession charges with the ammunition charge. See U.S.S.G. § 3D1.2(d) (offenses covered by U.S.S.G. § 2K2.1 shall be grouped); U.S.S.G. § 2K2.1 (entitled "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition"). The only question, then, is whether Holmes' possession of the three guns was part of the same course of conduct or common scheme or plan as his possession of the shotgun ammunition. "The 'same course of conduct' concept ... looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected together' by common participants or by an overall scheme." United States v.

Sanders, 982 F.2d 4, 9 (1st Cir. 1992) (internal quotation marks and citation omitted); see U.S.S.G. § 1B1.3, app. note 9.

We see no error in the sentencing court's conclusion that Holmes' possession of the three guns in question and his possession of ammunition were all part of the same course of conduct. Holmes' constructive possession of the shotgun was part of the same course of conduct as his possession of the matching ammunition for that gun; after all, the latter generally is not used without the former. Holmes argues that there is no evidence that he kept the shotgun shells in aid of his drug business, but the relevant question is whether his possession of that shotgun was related to the crime for which he was convicted, i.e., his possession of the shotgun ammunition. Clearly it was.

We also see no error in the district court's conclusion that Holmes' possession of the two handguns also was part of the same course of conduct, i.e., illegal possession of ammunition and weapons (the shotgun) at his home, in violation of 18 U.S.C. § 922(g). The CI reported that he had seen both handguns in Holmes' apartment; he saw the smaller handgun when he met Holmes at the apartment shortly before the first drug transaction, and he saw the larger handgun on two occasions (during the second drug transaction at Holmes' home, and during some previous visit by the CI to the apartment). Holmes possessed all three guns, as well as the ammunition, within a very short time frame: only one month. It

appears that Holmes' possession of ammunition and multiple weapons was all part of a single scheme or plan to run a drug operation out of his home (in partnership with Hopkins and Pressey) and to support that operation through the possession of weapons and ammunition.  This is sufficient.  Holmes contends that possession of firearms can never be treated as relevant conduct to the offense of possession of ammunition; but he cites no case law in support of this suggestion, and the argument is contrary to the plain language of U.S.S.G. §§ 1B1.3(a)(2) & 3D1.2(d).  Finally, Holmes argues that the court's decision to enhance his sentence on the basis of uncharged conduct violated his Sixth Amendment rights.  This argument fails.  See United States v. Zapata, 589 F.3d 475, 484 (1st Cir. 2009).

Affirmed.  See 1st Cir. R. 27.0(c).